BURNEY *v.* McCALL.

No. 12179. MAY 11, 1938.

*P. Q. Bryan* and *Bob Humphreys,* for plaintiff in error.
*Covington & Covington,* contra.

RUSSELL, Chief Justice. McCall filed a petition against Burney, alleging that petitioner is a share cropper on land belonging to Mrs. Susan E. Burney, wife of the defendant, having made a contract as such share cropper through the defendant as her agent; that the defendant, acting for his wife, furnished certain supplies to petitioner, and refuses to advise petitioner how his account for such supplies stands, or to make an accounting to petitioner; that defendant collected, as hail insurance on the four acres of tobacco hereinabove referred to, the sum of $168.88 in cash, having paid

for such insurance, as premiums, $20; that petitioner's half of the net in this matter is $124.44, that the melons produced on said lands have been gathered, and sold by defendant, that petitioner does not know, for reasons stated, what amounts were received for the melons, the defendant having told him, when he inquired about it, that it was none of his business. "8. The crop of tobacco made by petitioner has been especially good in quantity and quality. It has been gathered, cured, and stored on the farm, in buildings under the control of the defendant. On the 31st day of July, 1936, defendant took more than 2,000 pounds of said tobacco, constituting the better grades, to a warehouse in Tifton for the purpose of selling it as soon as the market opens on August 4th. 9. As will appear from what has been hereinbefore stated, petitioner owes defendant and his principal practically nothing, as the sum total of the advances made by defendant to petitioner for the sustenance of himself and family is, to the certain knowledge of petitioner, less than $100, and the amount received for insurance is itself sufficient to more than pay for such advances, and petitioner's share of the fertilizer bill is less than $70. 10. Of course, defendant knows exactly how the matters of accounting stand between his principal and petitioner; but when, as has been said, petitioner calls on him for an accounting, he has refused. In fact, at such times, he has completely lost his temper, and told petitioner flatly that he (petitioner) had nothing to do with the matter. For instance, he became greatly excited when petitioner made some simple suggestion about the marketing of the melons, and asserted with energy that it was none of defendant's [plaintiff's] business, and this attitude he has since maintained, more than once telling petitioner to move himself off the place, as he had nothing coming to him. It has seemed to petitioner that defendant takes it as a personal grief that petitioner may come into possession of his part of the abundant and profitable crops which have been called out of the soil by the toil of petitioner, his wife and children. 11. Defendant seems to be of a restless and quarrelsome nature; and petitioner is informed reliably that he has said that he is going to leave his family, go out of this county, and go to Florida; all of which he is quite capable of doing, having at least once in the past done just that thing, remaining away for practically half a year. 12. Defendant is entirely insolvent, and reck-

less and careless of the rights of petitioner. Unless he is restrained, he will sell the crops, appropriate the sums to himself, and go outside the State of Georgia, as petitioner is reliably informed he has said it is his purpose to do. 13. Defendant's principal, Mrs. Susan E. Burney, is not herein charged as being a party to the actions or purposes of defendant. Exactly the reverse is alleged regarding her—she is incapable of doing wrong or planning wrong to any person. Petitioner might have some recourse on her in case he is wronged by her agent; but he does not like to contemplate the necessity of such an action while it is yet time to protect himself and her against the wrongful acts and plans of defendant. The case being thus, and the common-law courts affording no complete and adequate remedy for the wrongs threatened to the parties at interest, including this petitioner, he invokes equitable relief at the hand of this court, having fully and completely performed his obligations under the forementioned contract, for the above-stated reasons, and for the additional reason that a multiplicity of suits will thereby be avoided; and prays: (a) That defendant make an immediate accounting to petitioner in the matter of their said business. (b) That the court appoint a receiver to take charge of the gathering and marketing of said crops . . and to hold the proceeds of such sales subject to the orders of this court. (c) Petitioner prays for such other and further relief as may to the court seem meet and proper in the premises."

The defendant filed a general demurrer to the petition. The court overruled the demurrer. In his answer the defendant denied the material averments of the petition, and in reply to the allegations as to the hail insurance collected on the tobacco crop said: "Defendant admits paragraph seven of said petition, in that he collected $268.88 for hail insurance, but denies being indebted to the plaintiff in any amount because of this action concerning hail insurance; defendant denies owing plaintiff the sum of $134.44 or any amount. Defendant shows in this connection that the said plaintiff refused to have any tobacco insured, tho he was prevailed on so to do, and further shows that the said plaintiff has never been charged with any insurance premiums since he refused to have anything to do with insuring said tobacco; defendant further shows that the plaintiff did tell him 'I

don't want no insurance.' Defendant shows then to protect himself he insured said tobacco in his name."

Upon the trial the following facts were agreed to by counsel for the parties: "In 1936 the defendant John Burney took out hail insurance covering the four acres of tobacco set out in petition; that said tobacco was destroyed by hail, and the said defendant collected $268.88 on insurance policy; that the said defendant paid the insurance premium and charged none of it to the plaintiff, who was a half cropper; that Mrs. J. H. Burney was the landlord and owned the land and crops, and that defendant was acting as her agent. All the balance of the crops was divided between plaintiff and defendant." On this statement and the admissions in the pleadings the judge directed a verdict in favor of the plaintiff for $134.44 insurance money, less $10, half the premium paid for the policy. By bill of exceptions the defendant assigns error on the overruling of his demurrer to the petition, and on the direction of the verdict and judgment.

■ Whether or not the petition alleged facts which would have authorized an accounting as against Mrs. Burney, with whom the plaintiff entered into a contract as a cropper, he expressly disclaims any intention to sue her, but proceeds solely against her husband, who was a disclosed and known agent at the time the contract was made and at the time of all the transactions set out in the petition. It follows that the plaintiff did not show any cause of action as against the defendant.

■ The verdict in the plaintiff's favor was erroneous, not only for the reason just stated, but for the additional reason that he failed entirely to establish any right to a share of the insurance collected on the policy of hail insurance taken out by the defendant. The statement in the defendant's answer that the plaintiff refused to take out such insurance, being established by uncontradicted evidence, negatived any right which the plaintiff might otherwise have had to a share in such insurance. The court erred in directing the verdict in plaintiff's favor for one half the amount of insurance collected, less one half the amount of premium paid.

*Judgment reversed. All the Justices concur, except Hutcheson, J., who dissents.*