29522.   BENNETT DRUG STORES   INCORPORATED *v.*
MOSELY.

DECIDED MAY 8, 1942.

348

*Reese, Scarlett, Bennet & Gilbert,* for plaintiff in error.
*Conyers, Gowen & Conyers,* contra.

FELTON, J. (After stating the foregoing facts.) The Code, § 42-701, provides: "No person shall furnish by retail, any poison enumerated in Schedules 'A' and 'B,' as follows, to wit: . . Schedule 'B.' . . Carbolic acid, . . without distinctly labeling the bottle, box, vessel, or paper in which said poison shall be contained, and also the outside wrapper or cover thereof, with the name of the article, the word 'Poison,' and the name and place of business of him who furnishes the same; nor unless upon due inquiry it shall be found that the person to whom it shall be delivered shall be aware of its poisonous character, and shall represent that it is to be used for a legitimate purpose." § 42-9915 provides for a misdemeanor punishment for a violation of the foregoing section. The allegations of the petition are sufficient to allege a violation of § 42-701, although it is not specifically pleaded. *Donaldson* v. *Great Atlantic & Pacific Tea Co., 186 Ga.* 870 (199 S. E. 213, 128 A. L. R. 456). If the alleged facts are proved they will show negligence per se.

The argument made by plaintiff in error is not that the petition does not allege negligence on the part of the plaintiff in error, but that the acts of the plaintiff in error were not the proximate cause of the death of petitioner's husband. It contends that the voluntary drunkenness of the deceased was the proximate cause of his death. This contention is not without merit and is not without some authority to support it. In *Meyer* v. *King, 72 Miss. 1* (16 So. 245, 35 L. R. A. 474), and *King* v. *Henkie, 80 Ala. 505,* 510 (60 Am. R. 119), it was held that the proximate causes of the deaths were the voluntary drunkenness of the deceased persons and not the sale of a prohibited substance to them. It is the gen-

eral rule that the duty which one owes to avoid the consequence of another's negligence is that degree of ordinary care which would be exercised by a sober person. There are exceptions to the rule, however, and we think the exception applies in this case. It is clear to us that a person who is too drunk to understand the dangerous nature of carbolic acid is one of the class designed to be protected by the Code section above referred to. The exception to the rule we have mentioned is based on the doctrine of last clear chance, or humanitarian doctrine, and is predicated on the theory that there is a duty owed to one who has been so negligent as to render himself incapable of exercising ordinary care to protect himself, after such incapacity is known. This doctrine has been applied in numerous cases where a drunk or a disabled person was in a place of danger and where his helplessness or facts indicating helplessness were known to another. Where this situation exists it is such other person's duty to exercise ordinary care to avoid injuring the unfortunate person even though if it had not been for the previous negligence, such as voluntary drunkenness, he could have put himself in a place of safety by the exercise of ordinary care. In 2 Restatement of the Law of Torts, 1257, 1258, § 480, it is stated: "A plaintiff who, by the exercise of reasonable diligence could have observed the danger created by the defendant's negligence in time to have avoided harm therefrom, may recover if, but only if, the defendant (a) knew of the plaintiff's situation, and (b) realized or had reason to realize that the plaintiff was inattentive and therefore unlikely to discover his peril in time to avoid the harm, and (c) thereafter is negligent in failing to utilize with reasonable care and competence his then-existing ability to avoid harming the plaintiff." In the same work, pages 1262, 1263, § 483, it is stated: "If the defendant's negligence consists in the violation of a statute enacted to protect a class of persons from their inability to exercise self-protective care, a member of such class is not barred by his contributory negligence from recovery for bodily harm caused by the violation of such statute." See also *Clay* v. *Macon & Birmingham R. Co.,* 111 *Ga.* 839 (36 S. E. 233); *Central Railroad* v. *Brinson,* 70 *Ga.* 207; Middlesex &c. Ry. Co. *v.* Egan, 214 Fed. 747(3), 31 L. R. A. (N. S.) 1035 (note). A person is charged with knowledge that a man staggering drunk is incapable of exercising ordinary care for his own

350

safety, and he is bound to deal with him with that fact in mind.

We think the fault with the Mississippi and Alabama cases, supra, is that they absolved the defendants by projecting the voluntary drunkenness of the deceaseds over and beyond the negligence of the defendants, when as a matter of fact that negligence was at an end at the time of the defendants' negligence, and this negligence of the deceaseds charged the defendants with knowledge that their acts might reasonably result in injury to the deceaseds or others. Of course no person is chargeable with unforseeable consequences. However, it seems to us that the conduct of a man who is staggering drunk is so unpredictable that one selling poison to him would be liable for whatever injury resulted. Plaintiff in error assumes that the deceased drank the poison with the intent to commit suicide. Even if this would relieve the defendant it does not appear from the petition that the deceased drank the poison, knowing that it was poison, and with the intention of taking his life.

The petition set forth a cause of action. The court did not err in overruling the demurrers.

*Judgment affirmed. Stephens, P. J., and Sutton, J., concur.*